1  Nathan A. Shaman, Esq. (SBN 272928)
   THE LAW OFFICES OF NATHAN SHAMAN
2  11650 Iberia Place, Suite 130
   San Diego, CA 92128
3  Telephone:  (619) 630-5618
   Facsimile:   (858) 737-5123
4  Email: nathan@shamanlegal.com

5  Attorney for Plaintiff Justin Stewart

6

7

8                   **UNITED STATES DISTRICT COURT**

9                   **SOUTHERN DISTRICT OF CALIFORNIA**

10 | JUSTIN STEWART,                          ) | Case No.: **'13 CV 2460 L    NLS**
   |                                          ) |
11 |          Plaintiff,                      ) | **COMPLAINT FOR DAMAGES**
   |                                          ) |
12 |   vs.                                    ) | **DEMAND FOR JURY TRIAL**
   |                                          ) |
13 | CITY OF SAN DIEGO, B. PREVOST,           ) |
   | Badge #0724, and ONE UNKNOWN             ) |
14 | SAN DIEGO POLICE OFFICER,                ) |
   |                                          ) |
15 |          Defendants.                     ) |
   |                                          ) |

16

17

18

19

20

21

Plaintiff JUSTIN STEWART (Stewart) brings this action against Defendants CITY OF SAN DIEGO (the City), B. PREVOST, Badge # 0724, and ONE UNKNOWN SAN DIEGO POLICE OFFICER.[1] Stewart seeks compensatory damages for violations of his Fourth Amendment rights.

## JURISDICTION

1. The Court has jurisdiction over this lawsuit under 28 U.S.C. § 1331 because this action is brought pursuant to 42 U.S.C. § 1983 and involves a federal question. The Court has personal jurisdiction over the City and the Officers pursuant to California Code of Civil Procedure § 410.10, which permits jurisdiction over a person to the extent permitted by the United States Constitution. This Court has venue pursuant to 28 U.S.C. § 1391(b)(1)-(b)(2).

## PARTIES

2. Plaintiff Justin Stewart is and at all times relevant was an individual and a resident of San Diego, California born in 1991.

3. Defendant City of San Diego is and at all times relevant to this action was a municipal corporation formed under the laws of the State of California.

4. Defendant B. Prevost is and at all times relevant to this action was a peace officer employed by the City of San Diego Police Department and designated by badge number 0724.

---

[1] Defendants B. Prevost and One Unknown San Diego Police Officer will be referred to together as the Officers. All events involving at least one of these officers will be referred to as involving both of them for purposes of this Complaint.

5.      Defendant One Unknown San Diego Police Officer is and at all times relevant to this action was a peace officer employed by the City of San Diego Police Department. At the present time, the name of this officer is unknown to Stewart. Stewart will seek leave to amend this Complaint upon ascertaining that name.

## FACTUAL BACKGROUND

6.      Stewart re-alleges and incorporates by reference each and every previous paragraph as though set forth here in full.

7.      On July 25, 2013 Edgar Arthur Suter, M.D. issued Stewart a written recommendation for the use of medical marijuana pursuant to Cal. Health & Safety Code §§ 11362.5 and 11362.7-11362.83. Dr. Suter found that Stewart was qualified to use medical marijuana pursuant to Cal. Health & Safety Code § 11362.5 to treat depression. The recommendation is valid from July 25, 2013 through July 24, 2014.

8.      On a regular basis, Stewart takes walks from his home to the Tierrasanta Recreation Center (Rec. Center) and back. The Rec. Center consists of athletic facilities and a park and is located immediately next to Gaspar de Portola Middle School (de Portola). Therefore, Stewart frequently walks back home through the de Portola parking lot.

9.      On the evening of July 25, 2013, a friend named Nick was visiting Stewart at his home in the Tierrasanta community in San Diego, California. As children, Stewart and Nick attended de Portola together. At approximately 7:30 p.m., Stewart and Nick decided to take a walk to the Rec. Center. Upon arriving, they sat on a park bench and

1  conversed for approximately 10-15 minutes.

2        10.    Around 8:00 p.m., Stewart and Nick began walking home to Stewart's

3  house. In doing so, they decided to walk through the de Portola parking lot as usual. At

4  that time, there were not any "No Trespassing" signs posted, and the parking lot was

5  accessible to pedestrian traffic.

6        11.    Upon entering the parking lot, a San Diego police cruiser shined its light on

7  Stewart and Nick and ordered them to stop over a loud speaker. They complied.

8        12.    The Officers exited their police vehicle and asked Stewart and Nick what

9  they were doing there. The Officers then stated that they smelled marijuana.

10       13.    Stewart informed the Officers that he had a medical marijuana

11 recommendation and, when asked, stated it was for depression. Thereafter, the Officers

12 stated that they wanted to perform a pat down search of Stewart's person. Stewart

13 responded that he was not comfortable with such a search.

14       14.    Without any explanation, one of the Officers turned Stewart around and

15 ordered him to put his wrists together. He complied. The Officer then patted Stewart

16 down. During the pat down, the Officer felt Stewart's cellular phone in his rear pocket

17 and, after Stewart explained it was his phone, decided not to remove it, leaving it in

18 place.

19       15.    The Officer located another item in Stewart's front right pocket. When

20 asked, Stewart explained that it was a personal medical device. Thereafter, the Officer

21 removed the device from Stewart's pocket and repeatedly questioned Stewart regarding

its nature while handling the device and examining it. Stewart repeatedly stated that it was a personal medical device. During the entire encounter, Stewart remained facing away from the Officers with his wrists held together in front of him as originally ordered.

16. After continued badgering concerning the device, Stewart finally turned his head to explain the nature of the device to the Officers. Before he could speak, the Officers threw Stewart against a fence and handcuffed him. The Officers then sat Stewart on the ground.

17. Subsequently, Nick explained to the Officers that the device was known as a "tugger," a device used to restore foreskin on a circumcised penis. The Officers then removed Stewart's backpack and put him in the back of their cruiser while still handcuffed. They allowed Nick to leave.

18. The Officers searched Stewart's backpack without his consent, spilling its contents on the hood of their police cruiser. They located condoms Stewart had obtained from Planned Parenthood, one-eighth of an ounce of marijuana, some empty pill bottles that previously had contained marijuana, a marijuana pipe, and a personal notebook. The Officers began rifling through Stewart's notebook. Stewart explained to the Officers that his medical marijuana recommendation was in his notebook and assisted them in locating it.

19. Subsequently, the Officers gave Stewart a written notice to appear for violating Cal. Health & Safety Code § 11357(b)—an infraction offense prohibiting

5
Complaint for Damages

possession of less than one ounce of marijuana—despite their awareness that Stewart had a valid medical marijuana recommendation, which rendered his possession legal pursuant to Cal. Health & Safety Code § 11362.5(d).

20. At the end of their encounter, the Officers read *Miranda* admonitions to Stewart, removed him from the cruiser, unlocked his handcuffs, and allowed him to leave.

## FIRST CLAIM FOR VIOLATION OF 42 U.S.C. § 1983

21. Stewart re-alleges and incorporates by reference each and every previous paragraph as though set forth here in full.

22. By engaging in the conduct described above, the Officers violated Stewart's right to be free of unreasonable searches and seizures under the Fourth and Fourteenth Amendments.

23. As a proximate result of the Officers' unconstitutional conduct, Stewart has suffered physical distress, mental distress, humiliation, embarrassment, and other forms of pain and suffering.

24. Upon information and belief, the Officers' conduct was motivated by evil motive and intent, including discrimination against Stewart because he was a medical marijuana patient and because of his personal medical decisions.

25. Moreover, by engaging in the conduct described above, the Officers exhibited reckless and callous indifference to Stewart's rights under the Fourth and Fourteenth Amendments.

26. Upon information and belief, the City has adopted and ratified policies, procedures, and customs governing detentions of, arrests of, and the use of force against unarmed individuals suspected of committing infraction offenses that cause police officers to execute such detentions, arrests, and use of force in an unreasonable manner in violation of the Fourth and Fourteenth Amendments.

27. Upon information and belief, the City has adopted and ratified policies, procedures, and customs that permit detention and arrest of a person for a violation of California's marijuana laws without reasonable suspicion or probable cause to believe that the person actually violated those laws.

28. Upon information and belief, the City has adopted and ratified policies, procedures, and customs that direct police officers to disregard evidence that a person is in compliance with California's medical marijuana laws when determining whether to detain or arrest that person for a violation of California law.

29. Upon information and belief, the policies, procedures, and customs referenced in paragraphs 26-28 are facially unconstitutional.

30. Upon information and belief, the policies, procedures, and customs referenced in paragraphs 26-28 cause reasonable police officers to apply them so as to commit unreasonable searches and seizures such as in this case.

31. As such, upon information and belief, the policies, procedures, and customs referenced in paragraphs 26-28 were a proximate cause of and a substantial factor in causing Stewart's physical distress, mental distress, humiliation, embarrassment, and

other forms of pain and suffering.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Justin Stewart requests that the Court grant the following relief after trial by jury:

32. For general and special damages according to proof at trial;

33. For punitive damages against the Officers;

34. For attorney's fees pursuant to 42 U.S.C. § 1988(b);

35. For expert fees pursuant to 42 U.S.C. § 1988(c);

36. For costs of suit incurred herein;

37. For interest according to the legal rate; and

38. For such other and further relief as the Court may deem just and proper.

Dated: October 11, 2013        THE LAW OFFICES OF NATHAN SHAMAN


                              By:    /s/ Nathan Shaman_____
                                     Nathan A. Shaman, Esq.
                                     Attorney for Plaintiff Justin Stewart

8
Complaint for Damages